**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | |
|---|---|
| IN RE: | ) |
| | ) **CHAPTER 7** |
| **TONY KYLE SKEEN,** | ) |
| | ) **CASE NO. 04-03239** |
| DEBTOR. | ) |

## MEMORANDUM DECISION

The matter before the Court is the Motion for Contempt filed June 20, 2006 in which the Debtor requests the Court enter an order and injunction against Stephanie Skeen Parks, the Debtor's former spouse, and her attorney to stay the proceedings against the Debtor currently pending in the Circuit Court of Russell County and to permanently enjoin Ms. Parks and her attorney from proceeding to attempt to enforce certain provisions of the divorce decree pursuant to 11 U.S.C. § 524(a)(2). The Debtor's Motion for Contempt was heard on July 19, 2006. At such time, the Court took the Motion under advisement and requested written argument from counsel. Both parties have since submitted written arguments to the Court. The matter is now ready for decision. For the reasons noted below, the Court concludes that the Motion should be denied, although the Court does grant declaratory relief to the Debtor.

### FINDINGS OF FACT

1. The Debtor and Stephanie Skeen Parks were married on November 25, 1988.

2. The parties separated on or about March 15, 2002. At this time, the Debtor and Ms. Parks owned and operated a business known as Lebanon Tooling and Machining, Inc.

3. On April 12, 2004, the Circuit Court of Russell County entered a Final Decree of Divorce

-1-

on the grounds that the parties lived separate and apart for more than one year. The Final Decree of Divorce provided that the Debtor would deliver to Ms. Parks a deed conveying all his interest in the former marital residence.[1] The Debtor would have all ownership interest in Lebanon Tooling and Machining, Inc., would make all payments he and his former spouse were obligated to pay upon the indebtedness of the business and would hold his former spouse harmless with respect to the business's debts. Further, the decree stated "pursuant to the parties' agreement, neither party shall be required to pay the other spousal support." (Final Decree of Divorce, page 4.)

4. On August 5, 2004, the Debtor filed a voluntary petition in this Court for relief under Chapter 7 of the Bankruptcy Code. On Schedule F, the Debtor listed Stephanie Parks with an unsecured claim of $0.00 as a co-debtor on the BB&T/Small Business Administration loan, which is also listed on Schedule F as an unsecured claim of $125,000.00.[2] On Schedule H, the Debtor again listed Stephanie Parks as a co-debtor on the BB&T loan. He did not list in his schedules his obligations to Ms. Parks under the divorce decree.

5. On August 8, 2004, the bankruptcy clerk served Stephanie Parks via first class mail with Notice of Commencement of the Debtor's case pursuant to Federal Rule of Bankruptcy Procedure 2002(a).[3]

---

[1] Prior to the entry of the Final Decree of Divorce, the Debtor paid $26,200.00 toward the indebtedness on the former marital residence. (Final Decree of Divorce 3.)

[2] Neither Ms. Parks nor BB&T/Small Business Administration filed a proof of claim.

[3] The Court notes that Ms. Parks acknowledges that she had knowledge of the Debtor's bankruptcy case. However, Ms. Parks claims that she was not aware that the Debtor was seeking a discharge from any of his obligations to her as set forth in the Final Decree of Divorce.

6. On September 15, 2004, the meeting of creditors pursuant to 11 U.S.C. § 341 was held in Abingdon, Virginia. On the same date, the Chapter 7 Trustee designated the Debtor's Chapter 7 case a no asset case.

7. An order discharging the Debtor from all personal liability for debts existing on the date his bankruptcy petition was filed and prohibiting all creditors from attempting to collect any such debt was entered on November 10, 2004.[4] By an order of the same date, the Debtor's bankruptcy case was closed.

8. On April 27, 2006, Ms. Parks filed a Motion to Reinstate the divorce case in the Circuit Court of Russell County and noticed it for hearing on May 26, 2006. The Motion explained that BB&T sued Ms. Parks on April 6, 2006 to collect a judgment in the amount of $160,312.31. Ms. Parks alleged that the Debtor had failed to pay the debts of Lebanon Tooling and Machining, Inc. as set forth in the Final Decree of Divorce. The Court finds that Ms. Parks and her counsel did not initiate the state court proceeding with a clear understanding that such action would violate the Debtor's discharge injunction pursuant to 11 U.S.C. § 524(a)(2).

9. The Debtor's counsel in the state court divorce action filed a Motion for Stay of Proceedings and Injunction in the Circuit Court of Russell County on May 25, 2006 requesting that the court stay any state court proceedings and permanently enjoin Ms. Parks from proceeding to attempt to enforce the hold harmless obligation set forth in the

---

[4] The Court notes that Ms. Parks did not participate in the Debtor's Chapter 7 bankruptcy case. She did not file a proof of claim or an adversary proceeding either to determine the dischargeability of any claim arising from the divorce decree or to object to the Debtor's discharge.

      Final Decree of Divorce. The Debtor argued that his obligation to hold Ms. Parks harmless for the business's debts had been discharged by the bankruptcy court's discharge order of November 10, 2004. The Debtor noted that Ms. Parks received notice of the Debtor's bankruptcy filing and failed to bring any action in the bankruptcy court to contest the dischargeability of this debt.

10.    On May 26, 2006, a hearing was held in the Circuit Court of Russell County on the Motion to Reinstate the divorce case and the Debtor's Motion for Stay of Proceedings and Injunction. Counsel for Ms. Parks and the Debtor's counsel in the divorce action participated in the hearing. At such time, the state court took the matter under advisement.

11.    The Debtor filed a Motion to Reopen his bankruptcy case in this Court on June 20, 2006. On the same date, the Debtor filed the Motion for Contempt which is currently before the Court. In support of his Motion, the Debtor argues that upon notice being given to Ms. Parks of his bankruptcy filing and her failure to bring any action under 11 U.S.C. § 523(c)(1) to determine dischargeability, the debt to BB&T was discharged and unenforceable against him and that Ms. Parks' and her counsel's actions are willful violations of 11 U.S.C. § 524(a)(2). As a result of these actions, the Debtor points out that he has incurred actual damages, including court costs and attorneys' fees for both his lawyer in the divorce action and his bankruptcy lawyer and requests that he be awarded such costs.[5]

---

[5] An itemized statement from the Debtor's divorce attorney was attached to the Debtor's Motion for Contempt. The statement shows a total of 6.60 hours billed and totals $1,030.00.

-4-

12. An order reopening the Debtor's bankruptcy case subject to the payment of the archives retrieval fee was entered on June 22, 2006. The fee was paid and the bankruptcy case was reopened on June 26, 2006.

13. On July 31, 2006, counsel for Ms. Parks filed a brief opposing the Debtor's Motion for Contempt in which it is argued that by the Debtor not listing the divorce decree on his schedules, Ms. Parks did not have notice that the hold harmless obligation set forth in the divorce decree was subject to discharge. Additionally, Mr. Parks argues that state court, in particular the Circuit Court of Russell County, is the proper forum to determine whether the hold harmless obligation was discharged.

> The Courts have held that states are the proper forum for the issues of family law. Bankruptcy Courts have given state courts the right to decide issues of property rights and marital debts. Bankruptcy Courts have been reinforced to stay out of family law. Sections 523(a)(5) and 523(a)(15) now limit the ability of Bankruptcy Courts to set aside rulings from state courts on liabilities from divorces.
>
> Congress in passing 523(a)(5) and 523(a)(15) has recognized the interlocking nature of negotiation and divorce. Many divorces are settled without a contest trial. The parties negotiate all of the terms found in a divorce: child custody, child support, spousal support, and title to real estate, retirement benefits and the responsibility for debts. The parties' position to child custody and real estate can be effected by an agreement. There is no way to pull only a part of a divorce decree into bankruptcy court without upsetting the whole divorce.

(Parks Br. 2.) In his brief counsel for Ms. Parks specifically asserts: "Ms. Parks relies on the language of 11 USC 523(A)(15) [sic]." (Parks Br. 1.)

CONCLUSIONS OF LAW

This Court has jurisdiction of this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the

District Court on July 24, 1984. Determination of the dischargeability of particular debts is a "core" bankruptcy proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) amended the statutory provisions relating to the dischargeability of divorce-related debts, specifically §523(a)(5) and (15), for cases filed on or after October 17, 2005. This case was filed on August 5, 2004. Accordingly, the BAPCPA amendments do not apply in this case.

Under the applicable law governing the determination of this matter, two types of divorce-related debts survive a chapter 7 bankruptcy discharge. First, debts "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record" are non-dischargeable. 11 U.S.C. § 523(a)(5). Pursuant to Federal Rule of Bankruptcy Procedure 4007(b), a complaint to determine dischargeability of a debt under § 523(a)(5) may be filed at any time. If the bankruptcy case has been closed, it may be reopened for the purpose of filing such complaint or the issue may be decided in state court.[6] Bankruptcy courts and state courts share concurrent jurisdiction to determine whether particular obligations are excepted from discharge by section 523(a)(5). *See In re Crawford,* 183 B.R. 103, 105 (Bankr. W.D. Va. 1995); *Brogan v. Brogan,* 525 S.E.2d 618, 621 (Va. Ct. App. 2000).

Second, section 523(a)(15) provides that any debt "not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in

---

[6] If the plaintiff files a proceeding in state court, the debtor can remove the case to bankruptcy court within thirty days of receipt of the initial pleading setting forth the claim for relief upon which the action is based. *See Rife v. Rife (In re Rife),* Ch. 7 Case No. 01-04702, Adv. No. 06-07011 (Bankr. W.D. Va. May 11, 2006); *In re Crawford,* 183 B.R. 103 (Bankr. W.D. Va. 1995).

connection with a separation agreement, divorce decree or other order of a court of record" is non-dischargeable unless one of the two following conditions are met:

> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor[.]

Thus, debts for spousal support and child support are never dischargeable, 11 U. S. C. § 523(a)(5), but other types of divorce-related debts, such as property settlements, will be discharged if the debtor cannot afford to pay the debt or if the benefit to the debtor from discharging the debt outweighs the detriment to the other party. Section 523(c)(1) provides the debtor will be discharged from the debts specified in § 523(a)(15) "unless, on request of the creditor to whom such debt is owed, and after notice and hearing, the court determines such debt to be excepted from discharge." Accordingly, the bankruptcy court has exclusive jurisdiction to determine the dischargeability of debts under § 523(a)(15). Federal Rule of Bankruptcy Procedure 4007(c) sets forth the time for filing a complaint under § 523(c)(1). A creditor holding a debt claimed to be nondischargeable under § 523(a)(15) must file a complaint to determine the dischargeability of the debt "no later than 60 days after the first date set for the meeting of creditors under § 341(a)." Fed. R. Bankr. P. 4007(c). If a creditor does not file a complaint during such time, the debt is discharged. *See Rife v. Rife (In re Rife),* Ch. 7 Case No. 01-04702, Adv. No. 06-07011, slip op. at 14-15 (Bankr. W.D. Va. May 11, 2006); Fed. R. Bankr. P. 4007, Advisory Committee Note (1983). As noted in *Collier on Bankruptcy,* "a debtor

will rarely wish to initiate a proceeding to determine dischargeability of debts which might be nondischargeable under [section 523(a)(15)], since the failure of a creditor to meet the deadline for filing such a proceeding under the rule would mean that all such debts are automatically rendered dischargeable."  9 *Collier on Bankruptcy* ¶ 4007.02 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.).

Unfortunately, it is not always simple for the court or the affected parties to distinguish whether an obligation is support as opposed to property settlement.  The distinction between the two types of debt is critical in determining the dischargeability of a divorce-related debt under section 523(a).  The United States Court of Appeals for the Fourth Circuit has stated, "[t]he analysis of dischargeability under section 523 must begin with the assumption that dischargeability is favored under the Code unless the complaining spouse, *who has the burden of proof,* demonstrates that the obligation at issue is actually in the nature of alimony, maintenance or support." *Tilley v. Jessee,* 789 F.2d 1074, 1077 (4th Cir. 1986)(decided prior to the Bankruptcy Reform Act of 1994, which added section 523(a)(15) to the Code).  The Fourth Circuit provided additional guidance to lower courts attempting to determine dischargeability of divorce-related debts by establishing that the intent of the parties is the primary consideration. "The proper test of whether the payments are [support] lies in proof of whether it was the intention of the parties that the payments be for support rather than as a property settlement." *Melichar v. Ost,* 661 F.2d 300, 303 (4th Cir. 1981). Applying these principles some court decisions have held a hold harmless agreement in very limited circumstances to be in the nature of support and thus non-dischargeable under § 523(a)(5).  *See e.g., In re Sledge,* 47 B.R. 349 (E.D. Va. 1981)(written stipulation filed in state court expressly stated that such an agreement

was "in the nature of support"); *In re Catron,* 186 B.R. 197 (Bankr. E.D. Va. 1995)(parties' separation agreement expressly provided that all monetary payments and obligations were to be considered "for the purposes of federal bankruptcy law, exempt from discharge and nondischargeable . . . as debts owed to a spouse or former spouse of the obligor . . . as being in the nature of alimony, maintenance or support . . . [and] intended for economic security."); *In re Ferebee,* 129 B.R. 71 (Bankr. E.D. 1991)(separation agreement expressly provided that the agreement to pay indebtedness and hold harmless was "an agreement in payment of alimony, maintenance and spousal support, and shall not be dischargeable in bankruptcy as it is not a division of property or a property agreement."). Other decisions have concluded that a hold harmless agreement was not in the nature of support and thus dischargeable under § 523(a)(15) provided the debtor could not afford to pay the debt or the benefit to the debtor from discharging the debt outweighed the detriment to the other party. *See e.g., In re Hardey,* No. 04-10199-SSM, 2005 Bankr. LEXIS 2030 (Bankr. E.D. Va. Apr. 13, 2005)(agreement to indemnify spouse from specific obligation was not in the nature of support, but nondischargeable under (a)(15) by virtue of former spouse's timely filed adversary proceeding); *In re Craig,* 196 B.R. 305 (Bankr. E.D. Va. 1996)(debtor's agreement to pay residential mortgage debt discharged under (a)(15) even though wife filed timely complaint where wife had filed her own chapter 7 petition); *In re Welborn,* 126 B.R. 948 (Bankr. E.D. Va. 1991)(hold harmless agreement discharged in former spouse's timely filed (a)(15) complaint because clear from the evidence that there was no intent to provide alimony or support). *See generally Brogan v. Brogan,* 525 S.E.2d 618, 621 n.5 (Va. Ct. App. 2000)*(*quoting *Stone v. Stone*, 199 B.R. 753, 758 (Bankr. N.D. Ala. 1996)).

    In this case, the Debtor argues that Ms. Parks failed to file a complaint to

determine the dischargeability of the hold harmless obligation set forth in the Final Decree of Divorce within the time prescribed by Rule 4007(c) and as such the debt is discharged. Although counsel for Ms. Parks admits that he is relying on 11 U.S.C. § 523(a)(15), he cites an earlier opinion of this Court, *In re Minnick,* 198 B.R. 187 (Bankr. W.D. Va. 1996), for the proposition that the burden is on the Debtor to file a complaint to determine the dischargeability the debt.

In *Minnick,* Judge H. Clyde Pearson of this Court reasoned that section 523(a)(15) "is essentially an affirmative defense for the debtor and, logically, the burden would be on the debtor to raise this defense by an Adversary Proceeding under Bankruptcy Rule 7001. However, the amendments to § 523(a) disregard this logic, by further amending § 523(c)(1) to include section (15)."[7] *Id.* at 189. Judge Pearson concluded that the issue between the parties was governed by § 523(a)(5). "The burden is upon the debtor to bring an Adversary Proceeding under § 523(a)(5) to determine whether the debt is dischargeable under § 523(a)(5) and whether subsection (a)(15) is applicable." *Id.* at 190.

In *In re Cannon*, 203 B.R. 768, 770 (Bankr. M. D. Fl. 1996), the court rejected Judge Pearson's ruling in *Minnick* and concluded that a dischargeability proceeding involving a debt under § 523(a)(15) must be filed within the time provided in Rule 4007(c) and "if it is not, it will be discharged." The *Cannon* court acknowledged the implications of such a conclusion.

> A literal application of [§ 523(a)(15)] compels but one conclusion: that, unless either the Debtor or an ex-spouse of the Debtor files a complaint within the time frame fixed by *F.R.B.P. 4007(c)*, a debt incurred during the marriage on which both the Debtor and his ex-spouse are liable

---

[7] Judge Pearson is referring to the Bankruptcy Reform Act of 1994, which added section 523(a)(15) to the Code.

>    will be discharged and will be within the protective provision of the injunction issued in conjunction with the grant of the Debtor's discharge. No doubt this interpretation of § 523(a)(15) creates a procedurally difficult problem to an ex-spouse, especially when the ex-spouse, as in the present instance, seeks an enforcement of the provision of the divorce decree which determined that the Debtor shall be liable for certain, specified debts incurred during the marriage and then the Debtor filed a petition for relief in the bankruptcy court.

*Id.* This Court concludes that the *Cannon* decision is consistent with its own interpretation of sections 523(a)(15) and 523(c)(1) and its prior application of the statutory sections. *See Rife v. Rife (In re Rife),* Ch. 7 Case No. 01-04702, Adv. No. 06-07011, slip op. at 14-15 (Bankr. W.D. Va. May 11, 2006). Therefore, the *Minnick* decision is overruled to the extent that it holds under pre-BAPCPA law the burden was on the debtor to file a complaint determining dischargeability of a debt under § 523(a)(15) within the time provided in Rule 4007(c). This Court agrees with Judge Pearson that there is a certain illogic in requiring the creditor to file a §523(a)(15) complaint and has itself observed that former spouses often don't understand the potential consequences to them of bankruptcy petitions filed by their ex-husbands or wives, as the case may be, but it is clear that is what Congress provided for and this Court does not have the authority to rule otherwise. In the present case, any §523(a)(15) claims were discharged as a result of Ms. Parks' failure to file a timely complaint in the Debtor's bankruptcy case. Because a published decision of this Court could have led Ms. Parks and her counsel to assume that it was the Debtor's responsibility to file such a proceeding[8], the Court will not impose any sanctions; thus the Debtor's request for sanctions is denied.

---

[8] Neither Ms. Parks nor her counsel has made any claim that the *Minnick* ruling was actually reviewed and relied upon and a decision therefore made not to file a section 523(a)(15) complaint objecting to the dischargeability of the hold harmless agreement.

-11-

Additionally, counsel for Ms. Parks argues that Ms. Parks did not have notice that the hold harmless obligation set forth in the divorce decree was subject to discharge because the Debtor did not list the divorce decree on his schedules. Ms. Parks reasons that she could not be expected to file a complaint to determine the dischargeability of the hold harmless obligation because she did not have notice that the obligation was subject to discharge. Section 523(a)(3) provides that even a debtor's failure to list a debt or a creditor on his schedules does not except the debt from the discharge if the creditor knew about the bankruptcy case. It is important to note that the statutory language refers specifically to the creditor's knowledge of the bankruptcy case, not whether the creditor understood that a bankruptcy discharge would or might affect the particular obligations owed by the debtor to such creditor. Ms. Parks does not dispute that she had knowledge of the Debtor's bankruptcy case. Moreover, the Debtor's bankruptcy schedules listed Ms. Parks as a co-debtor on Schedule F and Schedule G. As such, the Court concludes that the Debtor's failure to specifically list Ms. Parks as a creditor for obligations owed to her under the divorce decree does not excuse her failure to file a complaint to determine the dischargeability of the hold harmless obligation.

The Debtor has requested the issuance of an injunction against Ms. Parks and her counsel. There are two reasons why this relief ought to be denied. First, an injunction against the use of any "action, . . . process, or . . . act" to attempt to collect a discharged obligation already exists by virtue of 11 U.S.C. § 524(a)(2). Therefore, the question is not the issuance of an additional injunction, but enforcement as may be appropriate under the existing circumstances of the injunction which already exists. Second, under Federal Rule of Bankruptcy Procedure 7001(7) a proceeding to obtain an injunction should be by way of an adversary proceeding rather

than by Motion.  Under the circumstances of this case, the Court, believing that the actions of Ms. Parks and her counsel were taken in good faith, even if mistaken, concludes that no enforcement action against them is appropriate.  Nevertheless, they are now on notice that continued efforts to enforce payment of admitted (a)(15) obligations of the Debtor, now discharged, would subject them to possible action by this Court to enforce the injunction created by 11 U.S.C. § 524(a)(2).  *See In re Haas,* No. 04-11534, 2004 Bankr. LEXIS 2216 (Bankr. E.D. Va. Dec. 22, 2004); *In re Dill,* 300 B.R. 658 (Bankr. E.D. Va. 2003).

This 11th day of August, 2006.

_____
UNITED STATES BANKRUPTCY JUDGE